IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| Jill Eklind, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Plaintiff, | ) | **AND ORDER ON** |
| | ) | **MOTION TO DISMISS** |
| vs. | ) | **AND MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| Cargill Incorporated, | ) | |
| | ) | Civil No. 3:07-cv-89 |
| Defendant. | ) | |

Before the Court are a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) and a Motion for Summary Judgment filed by Defendant Cargill Incorporated ("Cargill") (Docs. #26, #44). Plaintiff Jill Anderson, formerly known as Jill Eklind ("Eklind"), has filed briefs in opposition to the motions (Docs. #35, #46). The Court has carefully considered the briefs and documents filed by the parties and now issues this memorandum opinion and order.

## SUMMARY OF DECISION

The Court concludes Eklind has no right to restoration under the FMLA because she was physically unable to return to work at the expiration of the twelve-week protected leave period, and therefore Cargill's Motion for Summary Judgment as to Count One is GRANTED. Furthermore, the Court finds that Eklind has not presented sufficient evidence of outrageous and extreme conduct to support a cause of action for intentional infliction of emotional distress, so Cargill's Motion for Summary Judgment as to Count Two is also GRANTED. As to the ADA disability discrimination claim set forth in Count Three, it is undisputed that Eklind has failed to exhaust her administrative remedies as required by Title I of the ADA, and thus Cargill's Motion for Summary Judgment as to that claim is GRANTED. However, the Court further concludes that the NDHRA disability

1

discrimination claim set forth in Count Three is timely, and that judgment as a matter of law on that claim is inappropriate under North Dakota's modified burden-shifting framework, and therefore Cargill's Motion for Summary Judgment as to the NDHRA claim is DENIED.

## FACTUAL BACKGROUND

Plaintiff Jill Eklind began her employment with Defendant Cargill in January 1995, working in the Fargo office as a processing specialist on the travel report processing team. As a processing specialist, Eklind primarily processed airline tickets for other employees, although she occasionally did non-programming database work for that team. In the late 1990s, she transferred to a position on the information technology ("IT") team[1] in Cargill's Fargo office and worked there continuously until January 30, 2006, when she began a medical leave of absence for treatment of a serious health condition.

During her time on the IT team, Eklind received numerous salary increases and consistently positive reviews of her behavior and performance. She was never written up for any disciplinary matters, and she was generally considered to be a well-liked, dedicated, and capable employee. However, in her performance review for the year 2004-05, her supervisors noted that she had struggled to complete some of her projects and recommended a class in basic programming techniques to improve her fundamentals. Resp. to Mot. for Summ. J., Exhibit 4, at 4. Furthermore, in their deposition testimony, both Wayne Werremeyer, the software development team leader, and

---

[1] There is something of a factual dispute in the record regarding the exact title of Eklind's position on the IT team. In her deposition testimony, Eklind recalled that she was an "IT business analyst" throughout her entire time working on that team. See Eklind Dep. at 27, May 22, 2008. Cargill and its employees have alternately represented her position as an "IT database tech," an "IT business analyst," or an "IT analyst." See Eklind Dep. at 35, Werremeyer Dep. at 13, Sept. 9, 2008; Slaby Dep. at 19, July 8, 2009; Gauthier Dep. at 23, June 11, 2008. For purposes of simplicity, the Court will refer to Eklind's former position as that of an "IT analyst," as it appears to be the most commonly used terminology in the record.

Jeff Slaby, the operations manager, reported that she struggled with programming-related assignments, that she lacked knowledge of fundamental programming concepts and skills, and that she was a hard worker but not a fast learner.  Werremeyer Dep. at 40-42; Slaby Dep. at 13-14.

In 1997, a few years into her employment with Cargill, Eklind was diagnosed with myelodysplastic syndrome, a precursor for acute leukemia.  Eklind informed Cargill of her medical situation shortly after this diagnosis, and she was able to work on a fairly normal schedule, with occasional days off for doctor appointments, for several years.  By the mid-2000s, her illness had progressed into acute myeloleukemia, and she was officially diagnosed with leukemia in early January 2006.

Eklind requested a medical leave of absence beginning on January 30, 2006, to accommodate the extensive treatment regimen proposed by her doctors.  Prior to her leave of absence, on approximately January 10, 2006, Eklind received a letter from Christine Gauthier, Cargill's human resources manager, stating the following:

> Your leave is a leave of absence covered under the Family and Medical Leave Act of 1993 (FMLA), provided you follow the requirements included in this letter.  Your leave, if finalized, will be counted against the 12 weeks of unpaid FMLA leave which you are entitled to annually using a rolling year.  You may, but are not required to, use earned vacation during any unpaid portion of your leave period.
> . . . .
>
> Any paid leave, as well as unpaid leave, will be counted against your maximum 12-week annual FMLA leave.

Resp. to Mot. for Summ. J., Exhibit 5; see also Eklind Dep. at 69-70.  In her deposition testimony, Eklind acknowledged that she understood her leave for leukemia treatment would be counted against the twelve-week leave period under the FMLA, and that she was physically unable to return to work at the end of twelve weeks in April 2006.  Eklind Dep. at 71, 74.

3

Due to her intensive leukemia treatment and recovery, including multiple rounds of chemotherapy, a bone marrow transplant in June 2006, and hospitalization and aftercare in Minneapolis through November 2006, Eklind was absent from Cargill for almost a full year. During her year-long leave, Cargill continued to provide her with employee benefits, including medical insurance and cost-free dental care. Eklind also received her full salary from Cargill during the first six months of her leave, after which time she began receiving long-term disability benefits through Cargill's insurer, as well as Social Security disability benefits.

On January 5, 2007, Eklind traveled from Fargo to Minneapolis for a follow-up doctor appointment, along with Christine Gauthier, who was her personal friend as well as Cargill's human resources manager. Gauthier knew when she accompanied Eklind to the appointment that Eklind hoped to seek a release from her doctor to return to work. Gauthier Dep. at 62. Although Cargill claims that it had already eliminated Eklind's IT analyst position in late 2006, Gauthier never informed Eklind of this at any time during their trip, even when Eklind expressed her interest in returning to work. In her deposition testimony, Gauthier stated that she did not inform Eklind about the elimination of her IT analyst position because she did not want to upset Eklind with bad news, and also because Cargill generally requires two representatives to be present during employment discussions. Gauthier Dep. at 54-55. At the appointment, and upon the prior request of Eklind, Gauthier reminded Eklind to ask her doctor whether she was capable of returning to work.[2] Gauthier Dep. at 60-61. Eklind's doctor then wrote a letter releasing her to return to work on a flexible, part time basis. Resp. to Mot. for Summ. J., Exhibit 7.

---

[2] In her deposition testimony, Eklind recalled that she asked Gauthier to remind her to get a doctor's note releasing her back to work. Eklind Dep. at 108-09. The Court need not resolve this minor factual dispute for purposes of this summary judgment motion.

On January 16, 2007, Eklind visited Cargill's Fargo office, officially submitted her doctor's letter to Gauthier, and informed her co-workers that she had been released to work and would be back the following Monday.  During her visit to Cargill that day, Eklind was not informed that her IT analyst position had been eliminated.

Gauthier called Eklind shortly before her intended return date and scheduled a meeting with Gauthier, Eklind, and Jeff Slaby on Tuesday, January 23, 2007.  The next day, in Slaby's office, Eklind was informed that her position on the IT team had been eliminated, and she was offered another position processing expense reports on a different team at a substantially lower salary, approximately $20,000 less per year.  In her deposition testimony, Eklind recalled that Slaby stated her position was eliminated due to "outsourcing," but she did not recall any other explanations Slaby or Gauthier may have offered for the elimination.  Eklind Dep. at 104, 110-111.  Eklind also recalled that Slaby told her if something new opened up on the IT team, she would be considered for the position, and she was offered the option of taking additional IT classes at Cargill's expense.  Eklind Dep. at 105, 120; see also Gauthier Dep. at 71, 82.

In his deposition testimony, Slaby stated the decision to eliminate Eklind's IT analyst position was made in the fourth quarter of 2006, when a software upgrade rendered most of the duties of her position unnecessary, and the remainder of her duties had been successfully assumed by other IT analysts on the team.  Slaby Dep. at 19, 22-23.  Werremeyer and Gauthier also stated in their deposition testimony that those were the reasons for eliminating Eklind's position, and that the decision was made in late 2006.  None of the other IT analysts on the software development team had their positions eliminated or automated during that time period.  Werremeyer Dep. at 60; Slaby Dep. at 22.

5

On February 4, 2007, shortly after her meeting with Slaby and Gauthier, Eklind saw a job opening for an "IT analyst" in Cargill's Fargo office listed in the Fargo Forum and on the North Dakota Job Service web site.  Cargill had first posted an advertisement for an "IT analyst" position in approximately late December 2006, see Timothy Fossen Dep. at 21, July 9, 2008, and continued to post advertisements for the position in various places, including the Fargo Forum, job-related web sites, and local college campuses, for several months thereafter.  The parties dispute whether the description and duties of the advertised "IT analyst" position are similar to the position Eklind held on the IT team at Cargill.  The parties also dispute whether Eklind would have been qualified for the advertised position based on her computer programming knowledge and skills.  However, Eklind never applied for the advertised IT analyst position, nor did she respond to Cargill's offer of the processing position on a different team.  Cargill never filled the IT analyst position and stopped running the advertisement sometime in late May or early June 2007.

Eklind began applying for full-time positions at other companies in March 2007, and she continued receiving long-term disability benefits from Cargill's insurer through late June 2007.  On June 25, 2007, she became employed as a contribution specialist at Discovery Benefits and worked there for approximately six months.  She is currently employed as a database reporting specialist at Ag Country Farm Services in Fargo.

On October 12, 2007, Eklind filed the instant action against Cargill arising out of the elimination of her IT analyst position and the ultimate termination of her employment.  On April 2, 2008, with leave of the Court and without opposition from Cargill, she filed an Amended Complaint adding a third claim to her action.  In Count One, Eklind alleges that Cargill violated the federal Family and Medical Leave Act ("FMLA") when it failed to restore her to the same or a substantially

similar position upon her return from leave.  In Count Two, she alleges that Cargill's outrageous and extreme discriminatory conduct constituted the tort of intentional infliction of emotional distress. Finally, in Count Three, Eklind alleges that Cargill impermissibly discriminated against her on the basis of her disability or perceived disability in violation of the federal Americans with Disabilities Act ("ADA") and the North Dakota Human Rights Act ("NDHRA").

## DISCUSSION

Cargill has moved to dismiss the disability discrimination claims set forth in Count Three under Rule 12(b)(6), Fed. R. Civ. P., arguing that Eklind failed to exhaust her administrative remedies on the ADA claim and that the statute of limitations has run on her NDHRA claim.  Cargill has also moved for summary judgment on all counts under Rule 56, Fed. R. Civ. P., including an alternative grounds for granting judgment in its favor on the NDHRA claim.[3]  Because the Court has considered the entire record in resolving these motions, including the statements of counsel at oral argument on the motion to dismiss, it will convert the Rule 12(b)(6) motion to dismiss into a motion for summary judgment and resolve all claims under the summary judgment standard.  See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); Hamm v. Rhone-Poulenc Rorer Pharms., Inc., 187 F.3d 941, 948 (8th Cir. 1999) ("Statements of counsel at oral argument raising new facts not alleged in the pleadings constitute

---

[3] The Court notes that Cargill has interposed an answer as to Counts One and Two of the Amended Complaint, but not as to Count Three.  Rule 56, Fed. R. Civ. P., provides that a defending party may move for summary judgment "at any time."  Courts have recognized that "no answer need be filed before a defendant's motion for summary judgment may be entertained."  Marquez v. Cable One, Inc., 463 F.3d 1118, 1120 (10th Cir. 2006); see also 10A Charles Alan Wright, et al., Federal Practice and Procedure § 2713, at 232 (3d ed. 1998) ("The defendant may make a Rule 56 motion or a Rule 12(b)(6) motion before answering.").  Thus, the Court concludes it is appropriate to consider the merits of Cargill's motion for summary judgment on Count Three.

'matters outside the pleadings' and, if considered by the district court, require treatment of a Rule 12(b)(6) motion to dismiss as one for summary judgment.").

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The burden is on the moving party to establish the basis for its motion. Donovan v. Harrah's Md. Heights Corp., 289 F.3d 527, 529 (8th Cir. 2002). It is axiomatic that the evidence is viewed in a light most favorable to the nonmoving party, and the nonmoving party enjoys the benefit of all reasonable inferences to be drawn from the facts. See, e.g., Vacca v. Viacom Broad. of Mo., Inc., 875 F.2d 1337, 1339 (8th Cir. 1989) (quotations omitted). If the moving party shows there are no genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing a genuine issue for trial. Donovan, 298 F.3d at 529.

A fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The basic inquiry is whether the evidence presents a sufficient disagreement to require full consideration on the merits by a jury, or whether it is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., 418 F.3d 820, 832 (8th Cir. 2005). When the unresolved issues in a case are primarily legal rather than factual, summary judgment is particularly appropriate. Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1326 (8th Cir. 1995). However, although summary judgment may be an appropriate and useful tool to avoid useless and time-consuming trials, "[it] should not be granted unless the moving party has established the right to a judgment with such clarity as to leave no room for controversy." Vacca, 875 F.2d at 1339 (citations omitted).

## I.  FMLA Claim

In Count One, Eklind alleges that Cargill violated the Family and Medical Leave Act ("FMLA") when it failed to reinstate her to the same or a substantially similar position at the end of her leave for leukemia treatment.  Cargill has moved for summary judgment, arguing that Eklind's FMLA claim must fail as a matter of law because she was unable to return to work at the conclusion of her twelve-week statutorily protected leave period.

The FMLA provides an eligible employee with twelve weeks of protected leave within a twelve-month period for particular family or medical reasons, including a "serious health condition that makes the employee unable to perform the functions of the position of such employee." Spangler v. Fed. Home Loan Bank of Des Moines, 278 F.3d 847, 851 (8th Cir. 2002) (quoting 29 U.S.C. § 2612(a)(1)(D)); see also Grosenick v. Smithkline Beecham Corp., 454 F.3d 832, 835 (8th Cir. 2006).  Upon an employee's timely return from FMLA leave, the employer generally must restore the employee to the position she held when the leave began or to an equivalent position. Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 86 (2002) (citing 29 U.S.C. § 2614(a)(1)); see also Throneberry v. McGehee Desha County Hosp., 403 F.3d 972, 977 (8th Cir. 2005) (noting that an employee's right to restoration under the FMLA is "limited").  However, an employee is not entitled to restoration if, at the end of the FMLA leave period, she is still "unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition."  Reynolds v. Phillips & Temro Indus., Inc., 195 F.3d 411, 414 (8th Cir. 1999) (quoting 29 C.F.R. § 825.214(b)); see also Bloom v. Metro Heart Group of St. Louis, Inc., 440 F.3d 1025, 1029 (8th Cir. 2006); Spangler, 278 F.3d at 851.

"Under the FMLA, twelve weeks of leave is both the minimum the employer must provide and the maximum that the statute requires." Slentz v. City of Republic, Mo., 448 F.3d 1008, 1010 (8th Cir. 2006) (quoting Ragsdale v. Wolverine Worldwide, Inc., 218 F.3d 933, 938 (8th Cir. 2000), aff'd 535 U.S. 81 (2002)).  Although the FMLA does not bar longer leave periods, and in fact encourages employers to provide a more generous leave policy for their employees, see Ragsdale, 535 U.S. at 87, "it only ensures protected leave for a twelve week period." Grosenick, 454 F.3d at 836; see also Spangler, 278 F.3d at 851 (comparing the "almost perpetual" protection for qualified individuals under the Americans with Disabilities Act to the limited twelve-week protection of the FMLA); McGregor v. Autozone, Inc., 180 F.3d 1305, 1308 (11th Cir. 1999) (holding that the plaintiff, who took fifteen weeks of leave when she gave birth, was not entitled to restoration under the FMLA because she "was absent for more than the protected period of time").  As the Eighth Circuit has recognized, "Congress only intended to mandate a minimum of twelve weeks of leave for employees, it did not intend to construct a trap for unwary employers who already provide for twelve or more weeks of leave for their employees." Ragsdale, 218 F.3d at 940.

In this case, it is undisputed that Eklind began her medical leave for leukemia treatment on January 30, 2006, and that she was released to return to work by her doctor on January 5, 2007, almost a full year later.  Because Eklind's medical leave was well in excess of the twelve-week statutorily protected leave period, she was not entitled to restoration under the FMLA upon her return.  Furthermore, it is undisputed that Eklind was physically unable to return to work at the end of the twelve-week protected leave period, which ended on approximately April 24, 2006, because she was still undergoing intensive treatment for leukemia that would ultimately take almost nine more months to complete.  Therefore, in addition to the untimeliness of her return for FMLA

purposes, Eklind was also not entitled to restoration under the FMLA because she was clearly unable to perform the essential functions of her position at the end of the protected leave period due to the continuation of her extremely serious health condition.

The Court has considered Eklind's arguments to the contrary and finds them to be unpersuasive. Eklind essentially argues that Cargill should be equitably estopped from asserting the expiration of her FMLA rights because it gave her permission to take additional leave and made representations that she would be restored to her former position upon her return. However, even assuming those facts to be true, the record reflects that Cargill never gave Eklind additional leave under the FMLA, nor did it make any representations that she would be returned to her former position because of her rights under the FMLA. Rather, Cargill explained to Eklind in the human resources letter dated January 10, 2006, that she was entitled to a maximum of twelve weeks of annual FMLA leave, whether paid or unpaid. In light of the clear limitation of FMLA leave set forth in this letter, it is irrelevant that Cargill may have known at the time that Eklind would likely require more than twelve weeks of leave for her treatment. Compare Slentz, 448 F.3d at 1011 (finding no equitable estoppel when the employer's letter unambiguously informed the employee that he was entitled to a maximum of twelve weeks of FMLA leave, regardless of the fact that the employer knew when it sent the letter that the employee was expected to require more leave), with Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 493 (8th Cir. 2002) (upholding the application of equitable estoppel when the employer's letter explicitly guaranteed the employee that his entire thirty-four week of sick leave qualified under the FMLA).

Furthermore, as to any representations which may have been made regarding Eklind's restoration upon her return from leave, Eklind cannot prove that she detrimentally relied on those

representations, or that the representations caused her not to return to work before the expiration of the FMLA leave period, because she was physically unable to return to work at the end of the twelve-week protected period in any event due to her serious and ongoing health condition.  See Baker v. Hunter Douglas, Inc., 270 Fed. Appx. 159, 164 (3rd Cir. 2008).  Finally, to the extent Eklind relies on Santosuosso v. Novacare Rehab., 462 F. Supp. 2d 590 (D.N.J. 2006), the Court has reviewed that case and finds it is not in line with the approach of the Eighth Circuit.

Here, Cargill generously provided Eklind with substantially more leave than the maximum of twelve weeks required by the FMLA.  However, that does not mean Eklind is automatically entitled to continued protection under the provisions of the FMLA beyond the twelve-week statutorily mandated period.  Because Eklind did not return to work by the end of the twelve-week FMLA period, and in fact could not have physically returned or performed the essential functions of her position at that time due to her ongoing battle with leukemia, she was not entitled to restoration to the same or a substantially similar position upon her return to Cargill.  Although Eklind may have other rights in her former position to enforce, those rights simply do not arise under the FMLA.  Cargill's Motion for Summary Judgment on Count One is GRANTED.

## II.  Intentional Infliction of Emotional Distress

In Count Two, Eklind sets forth a claim for intentional infliction of emotional distress. Specifically, she contends that Cargill's outrageous discriminatory conduct deprived her of individual dignity and caused her to suffer loss of income, loss of security, and severe emotional distress.

Under North Dakota law, the elements of an action for intentional infliction of emotional distress are "extreme and outrageous conduct that is intentional or reckless and causes severe

emotional distress." Zuger v. State, 2004 ND 16, ¶ 13, 673 N.W.2d 615, 621.  "In determining whether conduct is extreme and outrageous, courts consider whether the conduct is so extreme in degree as to be beyond all possible bounds of decency and utterly intolerable in a civilized society." Vandall v. Trinity Hosp., 2004 ND 47, ¶ 29, 676 N.W.2d 88, 97.  Although the nature of any employment termination "is such that it often produces stress and mental anguish in the person being terminated," the relevant inquiry is not whether the termination was traumatic, but whether the termination was outrageous.  Dahlberg v. Lutheran Soc. Servs. of N.D., 2001 ND 73, ¶ 25, 625 N.W.2d 241, 249 (quotation omitted).

After carefully reviewing the record in this case, the Court concludes that a reasonable jury could not find Cargill's conduct to be extreme, outrageous, or beyond all possible bounds of decency.  The Court recognizes that the circumstances surrounding Eklind's termination from employment with Cargill likely caused her to experience anxiety and stress; however, Cargill's conduct simply does not rise to the level of outrageousness required to support a cause of action for intentional infliction of emotional distress.  Because there are no genuine issues of material fact on this claim and Cargill must prevail as a matter of law, the Motion for Summary Judgment as to Count Two is GRANTED.

### III.  Disability Discrimination under the ADA and the NDHRA

In Count Three, Eklind alleges that Cargill discriminated against her on the basis of her disability or perceived disability in violation of the Americans with Disabilities Act ("ADA") and the North Dakota Human Rights Act ("NDHRA").  Cargill argues that the ADA claim must fail as a matter of law because Eklind has not exhausted her administrative remedies.  Cargill further argues it is entitled to summary judgment on the NDHRA claim because the statute of limitations has run,

13

or in the alternative, because Eklind cannot prove that Cargill's proffered legitimate, nondiscriminatory reason for eliminating her position was pretextual.[4]  The Court will address each of these arguments in turn.

## A.  ADA Claim

Cargill contends that it is entitled to judgment on Eklind's ADA claim because she failed to exhaust her administrative remedies with the EEOC prior to filing suit.  At oral argument, Eklind conceded that she has not received a right-to-sue letter from the EEOC and that she has not exhausted her administrative remedies.  However, Eklind persists in her argument that this claim should proceed to trial, requesting that the Court apply equitable principles to relieve her from the "unduly burdensome" requirement of exhaustion.  Pl.'s Resp. to Mot. to Dismiss, at 8.

It is well established that Title I of the ADA, which applies to claims of employment discrimination, requires exhaustion of administrative remedies.  See Randolph v. Rodgers, 253 F.3d 342, 346-47 n.8 (8th Cir. 2001).  Administrative remedies are exhausted by the timely filing of a charge with the EEOC and the receipt of a right-to-sue letter.  Faibisch v. Univ. of Minn., 304 F.3d 797, 803 (8th Cir. 2002); see also McSherry v. Trans World Airlines, Inc., 81 F.3d 739, 740 n.3 (8th Cir. 1996).  Here, Eklind concedes that she has not received a right-to-sue letter from the EEOC.  Furthermore, Eklind has cited no authority in support of her argument that equitable principles should relieve her of the obligation to exhaust administrative remedies in this case, and the Court

---

[4] Cargill has also moved for summary judgment on the NDHRA claim on the grounds that Eklind cannot prove the prima facie elements of a failure-to-hire case.  However, Eklind does not allege that she ever applied for the IT analyst position which Cargill sought to fill after her position was eliminated, nor that she was ever considered for that position and rejected.  Rather, Eklind essentially contends that Cargill's advertising of the substantially similar IT analyst position is evidence that it discriminated against her on the basis of disability when it eliminated her position.  After closely examining the entire record, particularly Eklind's allegations in support of her claim, the Court concludes this is not a failure-to-hire case, and therefore it will not address Cargill's arguments in that regard.

is not persuaded that such relief would be appropriate.[5]  Because Eklind has failed to exhaust her

administrative remedies as required by Title I of the ADA, Cargill's Motion for Summary Judgment

as to the ADA claim asserted in Count Three is GRANTED.

## B.  NDHRA Claim

As to the NDHRA claim, Cargill contends that it is time barred under N.D.C.C. § 14-02.4-

19(2) because it was filed more than 300 days after Eklind was notified about the elimination of her

position on January 23, 2007.  In the alternative, Cargill contends that the NDHRA claim fails as

a matter of law because Eklind cannot show that its legitimate, nondiscriminatory reason for

eliminating her position was pretextual.  In opposition, Eklind argues that she was constructively

discharged in June 2007, which is within the 300-day window, and therefore her claim was timely

filed.  Eklind further argues that Cargill misapprehends the applicable burden-shifting framework

under North Dakota law, and that she has presented sufficient evidence of discrimination to survive

the motion for summary judgment.

### 1.  Statute of Limitations

The NDHRA contains a specific statute of limitations, N.D.C.C. § 14-02.4-19(2), which

governs claims of employment discrimination.  Section 14-02.4-19(2) provides, in relevant part:

> Any person claiming to be aggrieved by any discriminatory practice other than
> public services or public accommodations in violation of this chapter may file a
> complaint of discriminatory practice with the department or may bring an action in
> the district court . . . within three hundred days of the alleged act of wrongdoing.

See also Ellis v. N.D. State Univ., 2009 ND 59, ¶ 15, 764 N.W.2d 192, 196.  Here, Cargill argues

---

[5] Eklind's contention that Cargill should have asserted the exhaustion defense in its answer rather than in a contemporaneous motion to dismiss is also without merit.  Rule 12(b), Fed. R. Civ. P., clearly provides that a party may assert the defense of failure to state a claim upon which relief can be granted "by motion," and the motion to dismiss in this case sufficiently notified Eklind that Cargill was asserting exhaustion of administrative remedies as a defense.

that the alleged act of wrongdoing occurred on January 23, 2007, when Eklind was informed that her position on the IT team had been eliminated.  Eklind counters that she continued to negotiate with Cargill for several months after the January meeting, and that she was constructively discharged in June 2007 when communication between the parties finally broke down.  However, the Court need not resolve this disagreement, nor address Eklind's theory of constructive discharge, because the NDHRA claim is timely in any event under the relation back doctrine.

Rule 15(c)(1)(B), Fed. R. Civ. P., provides that an amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading." The basic inquiry is whether the amended complaint is related to the general fact situation alleged in the original pleading.  Alpern v. UtiliCorp United, Inc., 84 F.3d 1525, 1543 (8th Cir. 1996).  The rationale behind the rule is that "a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." Maegdlin v. Int'l Ass'n of Machinists and Aerospace Workers, Dist. 949, 309 F.3d 1051, 1053 (8th Cir. 2002) (quoting Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984)). Courts have permitted relation back of amendments that change the legal theory of the action, add other claims arising out of the same transaction or occurrence, or increase the amount of damages claimed.  Alpern, 84 F.3d at 1543 (citations omitted).  "It is the facts well pleaded, not the theory of recovery or legal conclusions, that state a cause of action and put a party on notice." Maegdlin, 309 F.3d at 1053 (quoting Hopkins v. Saunders, 199 F.3d 968, 973 (8th Cir. 1999)).

Here, Eklind filed her original Complaint on October 12, 2007, setting forth a statement of the facts surrounding her illness with leukemia, her medical leave for leukemia treatment, and her

16

subsequent termination from Cargill, as well as claims for an FMLA violation in Count One and intentional infliction of emotional distress in Count Two.  With leave of the Court and without opposition from Cargill, Eklind filed her Amended Complaint on April 2, 2008.  The Amended Complaint added only Count Three, which asserts claims for violation of the ADA and NDHRA, and in all other respects it is identical to the original Complaint, including the factual allegations regarding the underlying occurrence.  The Court concludes that the claims in Count Three clearly arose out of the same factual transaction or occurrence set out in the original Complaint, and therefore Count Three relates back to the date of the original pleading.

Because Count Three relates back to the date of the initial Complaint, which was filed on October 12, 2007, the timeliness of the NDHRA claim asserted in Count Three must be analyzed in relation to that date as well.  It is undisputed that Eklind was first informed about the elimination of her IT analyst position at Cargill on January 23, 2007, and that she filed her Complaint in this Court on October 12, 2007, approximately 262 days later.  Therefore, even using the earliest possible date advocated by Cargill as the date of the alleged act of wrongdoing, the NDHRA claim falls within the 300-day limitation period set forth in N.D.C.C. § 14-02.4-19(2).  The Court concludes Eklind's NDHRA claim is not time barred, and thus the Motion for Summary Judgment on that basis is DENIED.

### 2.  Burden-Shifting Framework

In the alternative, Cargill argues that it is entitled to summary judgment on the NDHRA claim because Eklind cannot show that its legitimate, nondiscriminatory reason for eliminating her IT analyst position was pretextual.  In particular, Cargill contends that Eklind's position was eliminated because all of her duties were either rendered unnecessary by technology upgrades or

absorbed by existing personnel during the course of her leave of absence, and there is no evidence in the record to demonstrate that this reason was false. Eklind opposes summary judgment, arguing that she has presented sufficient evidence of disability discrimination under the modified burden-shifting framework of the NDHRA to require submission of her claim to a jury.

The NDHRA, codified at N.D.C.C. Chapter 14-02.4, was designed to prevent and eliminate discrimination in employment relations, public accommodations, housing, state and local government services, and credit transactions. Ramey v. Twin Butte Sch. Dist., 2003 ND 87, ¶ 10, 662 N.W.2d 270, 273 (quotation omitted). Section 14-02.4-03, N.D.C.C., which governs the discriminatory practices of employers, provides in relevant part:

> It is a discriminatory practice for an employer to fail or refuse to hire a person; to discharge an employee; or to accord adverse or unequal treatment to a person or employee with respect to application, hiring, training, apprenticeship, tenure, promotion, upgrading, compensation, layoff, or a term, privilege, or condition of employment, because of . . . physical or mental disability . . . .

The North Dakota Supreme Court applies a modified version of the familiar McDonnell Douglas burden-shifting framework to employment discrimination cases under the NDHRA. See Schweigert v. Provident Life Ins. Co., 503 N.W.2d 225, 229-30 (N.D. 1993); see also Carlson v. Coop. Power Ass'n, No. 99-3198, 2000 WL 1100391, at *2 (8th Cir. Aug. 8, 2000) (recognizing the modified burden-shifting framework which applies in employment discrimination cases under the NDHRA); Birchem v. Knights of Columbus, 116 F.3d 310, 314 (8th Cir. 1997) (stating that proof of pretext "is not part of the NDHRA plaintiff's summary judgment burden").

The plaintiff in an employment discrimination action under the NDHRA bears the initial burden of establishing a prima facie case. Koehler v. County of Grand Forks, 2003 ND 44, ¶ 13, 658 N.W.2d 741, 746. To establish a prima facie case of disability discrimination, the plaintiff must

18

prove that: (1) she was disabled; (2) she was qualified to do the essential functions of the job, with or without reasonable accommodation; and (3) she suffered an adverse employment action due to her disability.  Buboltz v. Residential Advantages, Inc., 523 F.3d 864, 868 (8th Cir. 2008); Chalfant v. Titan Distrib., Inc., 475 F.3d 982, 988 (8th Cir. 2007); see also Koehler, 2003 ND 44, ¶ 12, 658 N.W.2d at 746 (quotation omitted) (holding that North Dakota courts considering claims under the NDHRA "will look to federal interpretations of corresponding federal antidiscrimination statutes for guidance when it is helpful and sensible to do so"); Engel v. Montana-Dakota Utils., 1999 ND 111, ¶ 8, 595 N.W.2d 319, 321-22 (applying the elements of a prima facie failure-to-hire case under federal ADA law to a similar claim by a disabled individual under the NDHRA).

If the plaintiff establishes a prima facie case of discrimination, "the burden of persuasion shifts to the employer to rebut the presumption of discrimination by proving by a preponderance of the evidence that its action was motivated by one or more legitimate, nondiscriminatory reasons." Jacob v. Nodak Mut. Ins. Co., 2005 ND 56, ¶ 13, 693 N.W.2d 604, 609 (quoting Schweigert, 503 N.W.2d at 229).  The plaintiff must ultimately prove that the discharge was unlawful discrimination and "may, but does not necessarily, prevail on the basis of the prima facie case combined with a finding of the incredibility of the defendant employer's proffered explanation for its employment decision."  Id. (quoting Schuhmacher v. N.D. Hosp. Ass'n, 528 N.W.2d 374, 379 (N.D. 1995)).

Much of the parties' briefing on this claim focuses on the appropriate burden-shifting framework to apply under the NDHRA, and they have largely neglected the issue of whether Eklind has established her prima facie case of disability discrimination.  After carefully examining the record, the Court finds that there are genuine issues of material fact on each element of the prima facie such that a reasonable jury could find Eklind has carried her initial burden.  Furthermore,

viewing the record in the light most favorable to Eklind and giving her the benefit of all reasonable inferences to be drawn from the facts, as well as properly recognizing the unique burden-shifting framework which applies under the NDHRA, the Court concludes that a reasonable jury could return a verdict in Eklind's favor on the ultimate question of disability discrimination.

Although Cargill has set forth a legitimate, nondiscriminatory reason for the elimination of Eklind's position, that alone is not sufficient to carry its summary judgment burden on an NDHRA claim.  See Carlson, 2000 WL 1100391, at *2 (noting that the Schweigert decision "made it more difficult to grant summary judgment to the employer at the pretext stage of the McDonnell Douglas analysis, because the party with the burden of proof is rarely entitled to summary judgment"). Rather, the jury must resolve the numerous issues of disputed fact remaining in this case, including whether Eklind was otherwise qualified to perform the essential functions of the IT analyst position which was available, and make credibility determinations in order to decide the ultimate question of fact, whether Cargill discriminated against Eklind on the basis of disability.  Cargill's Motion for Summary Judgment as to the NDHRA claim in Count Three is DENIED.

## DECISION

Cargill's Motion for Summary Judgment is **GRANTED** as to Counts One, Two, and the ADA claim asserted in Count Three.  The Motion for Summary Judgment is **DENIED** as to the NDHRA claim asserted in Count Three.  Eklind's Motion for Oral Argument on the Motion for Summary Judgment is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated this 14th day of August, 2009.

_____/s/   Ralph R. Erickson_____
Ralph R. Erickson, District Judge
United States District Court